UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____
                                        )
                                        )
JAMES GUZMAN,                           )
                                        )
            Petitioner,                 )    06 Civ. 3681 (SCR)(LMS)
                                        )
      - *against* -                     )
                                        )    **REPORT AND**
ISRAEL RIVERA, Superintendent,          )    **RECOMMENDATION**
Coxsackie Correctional Facility,        )
                                        )
            Respondent.                 )
                                        )
_____)

TO:   THE HONORABLE STEPHEN C. ROBINSON,
      UNITED STATES DISTRICT JUDGE

  <u>Pro se</u> petitioner, James Guzman ("Petitioner"), files this petition for a Writ of Habeas Corpus (the "Petition") pursuant to 28 U.S.C. § 2254, challenging his sentence pursuant to Rockland County Indictment Number 331/01 to which he pled guilty to one count of Criminal Possession of a Weapon in the Third Degree (N.Y. Penal Law § 265.02(4)), one count of Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.16(1)), two counts of Criminal Possession of a Controlled Substance in the Seventh Degree (N.Y. Penal Law § 220.03), one count of Criminally Using Drug Paraphernalia in the Second Degree (N.Y. Penal Law § 220.50(3)), Resisting Arrest (N.Y. Penal Law § 205.30), and Driving While Ability Impaired By Drugs (N.Y. Vehicle and Traffic Law § 1192(4)). Pet. at 1. On April 17, 2002, Petitioner pled guilty to all seven counts in the indictment. Plea at 13, 16, 24, 25, 27, 31. On June 28, 2002, Petitioner was sentenced in the County Court of Rockland as a persistent violent felony offender to an indeterminate term of from twelve and one-half years to life on the

1

weapons charge, a concurrent indeterminate sentence of from ten to twenty years on the third degree drug possession charge, and concurrent sentences of one year on each of the remaining misdemeanor charges. S:10-11.[1] Petitioner is currently incarcerated in the Coxsackie Correctional Facility in Coxsackie, New York.

Petitioner seeks habeas relief on three grounds: (1) that Petitioner's Fourth Amendment rights were violated by the alleged illegal search of his car; (2) that Petitioner's Fifth Amendment rights were violated because his statements to police were not made freely and voluntarily; (3) and that Petitioner was improperly sentenced as a persistent violent felony offender. Pet. at 4; Petitioner's Mem. of Law at 23-45; Resp't Ex. B (Appellant's Brief).

I.  BACKGROUND

    A.  The Crimes

On October 18, 2001, Petitioner was driving his red Neon northbound on I-87, with passenger Benjamin Matias, when he was pulled over by New York State Trooper James Durkin for failing to stay in the lane. H: 8, 16.[2] When Officer Durkin approached the car and addressed Petitioner, he noticed Petitioner's eyes were glassy and bloodshot with constricted pupils and that Petitioner was perspiring and trembling. H:19, 20. Officer Durkin suspected that Petitioner was under the influence of either heroin or cocaine. H: 28. During the traffic stop, Officer Durkin's partner, Officer Muharem Hasan noticed a deck of heroin on the driver's side floorboard. H: 30. Subsequently, Officer Durkin asked Petitioner to step out of the car and Petitioner was required to perform standard field sobriety tests, which he failed. H:37-41. During this time, Officer

---

[1] Hereinafter, "S" refers to the Sentencing minutes of June 28, 2002.

[2] Hereinafter, "H" refers to the hearing transcript dated March 21, 2002.

Hasan was searching the trunk of Petitioner's vehicle, where he found a gun. H: 40. At that point Petitioner fled the scene, was chased by Officer Hasan, and was apprehended along the side of the highway. H: 41-45. Petitioner sustained a head injury during the struggle to apprehend him, requiring Officer Durkin to call for paramedics. H: 45-47. When the paramedics loaded Petitioner on a stretcher, Officer Pearsall, who had joined the scene in answer to Officer Durkin's radio call for assistance, noticed a plastic bag protruding from the waistband of Petitioner's pants. H: 47. The bag contained one hundred and ninety-nine decks of heroin. H2: 64.[3]

### B. Procedural History

On November 2, 2001, Petitioner was indicted in Rockland County, indictment number 331/01, for one count of Criminal Possession of a Weapon in the Third Degree (N.Y. Penal Law § 265.02(4)), one count of Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.16(1)), two counts of Criminal Possession of a Controlled Substance in the Seventh Degree (N.Y. Penal Law § 220.03), one count of Criminally Using Drug Paraphernalia in the Second Degree (N.Y. Penal Law § 220.50(3)), Resisting Arrest (N.Y. Penal Law § 205.30), and Driving While Ability Impaired By Drugs (N.Y. Vehicle and Traffic Law § 1192(4)). Pet. at 1. Petitioner pled not guilty and then, through his attorney, filed a pre-trial motion to suppress the evidence and dismiss the indictment. Resp't Opposing Declaration at 4. The court held a Mapp/Huntley hearing to determine the admissibility of both the physical evidence and Petitioner's statements. Id. After four days of testimony, the court held that the search was legal and that Petitioner had knowingly and voluntarily waived his Miranda rights.

---

[3] Hereinafter, "H2" refers to the hearing transcript dated March 22, 2003, although it is assumed that this date is an error as all other hearings occurred in March and April of 2002.

H4:114-122.[4]  On April 17, 2002, Petitioner pled guilty to all seven counts in the indictment. Plea at 13, 16, 24, 25, 27, 31.  At the time of the plea, Petitioner made clear that he was not waiving any appellate rights by entering the plea.  Plea at 6-10.  On June 28, 2002, Petitioner was sentenced in the County Court of Rockland as a persistent violent felony offender to an indeterminate term of from twelve and one-half years to life on the weapons charge, a concurrent indeterminate sentence of from ten to twenty years on the third degree drug possession charge, and concurrent sentences of one year on each of the remaining misdemeanor charges.  S: 10-11.

Petitioner then filed an appeal with the New York State Supreme Court, Appellate Division, Second Department, claiming that the search of his car was unlawful and that his statements were not knowingly and voluntarily given.  Resp't Ex. B (Appellant's Brief).  By Decision and Order, the Appellate Division affirmed the judgment of the lower court.  People v. Guzman, 23 A.D.3d 579 (2nd Dep't 2005).  Petitioner then sought leave to appeal to the New York State Court of Appeals, which was denied.  People v. Guzman, 6 N.Y.3d 813 (2006).  On April 25, 2006, Petitioner timely filed this petition for a writ of habeas corpus, and he has no other petitions or appeals pending regarding this matter.  Pet. at 5.

**II.  DISCUSSION**

    **A.  Standard of Review**

"Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  To be granted a writ of habeas corpus from a federal district court, a petitioner must fully and carefully comply with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

---

[4]Hereinafter, "H4" refers to the hearing transcript dated April 15, 2002.

§ 2254. Under the AEDPA, all state remedies must be exhausted before a federal court may consider a state prisoner's petition for a writ of habeas corpus. 28 U.S.C. § 2254(b)(1)(A); see also Picard v. Connor, 404 U.S. 270, 275 (1971). In the interests of comity and expeditious federal review, "[s]tates should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." See Coleman v. Thompson, 501 U.S. 722, 731 (1991); see also Daye v. Attorney General of the State of New York, 696 F.2d 186, 190-91 (2d Cir. 1982). The exhaustion requirement of the federal habeas corpus statute is set forth in 28 U.S.C. § 2254(b), (c):

> (b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b), (c).

The Second Circuit has adopted a two-stage inquiry to determine whether the exhaustion doctrine has been satisfied. See Klein v. Harris, 667 F.2d 274, 282 (1981). First, the petitioner must have "fairly presented" his or her federal constitutional claim to the appropriate state courts. Picard v. Connor, 404 U.S. at 275-76. "A claim has been 'fairly presented' if the state courts are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.'" Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997) (quoting Daye, 696 F.2d at 191). In other words, the claim must have been presented in a way that is "likely to alert the court to [its] federal nature." Daye, 696 F.2d at 192. The fair presentation requirement is satisfied if the state

5

court brief contains phrases, such as "under the Due Process Clause" or "under the Constitution," that point to the petitioner's reliance on the United States Constitution as his or her legal basis for relief. Klein, 667 F.2d at 282 (internal citations omitted). A claim may be considered "presented" even if the federal grounds were not explicitly asserted before the state courts if the petitioner, in asserting his or her claim before the state court, did one of the following: (1) relied on pertinent federal cases that employ constitutional analysis, (2) relied on pertinent state cases that apply constitutional analysis in like fact situations, (3) asserted his or her claim in terms so particular as to call to mind specific constitutionally-protected rights; or (4) alleged a fact pattern that falls within the mainstream of constitutional litigation. See Daye, 696 F.2d at 186; Irving v. Reid, 624 F. Supp. 787, 789 (S.D.N.Y. 1985).

Second, having fairly presented his or her federal constitutional claim to the appropriate state court and having been denied relief, the petitioner must appeal his or her conviction to the highest state court. Klein, 667 F.2d at 282. Where a petitioner fails to present his or her federal constitutional claim to the highest state court, the claim cannot be considered exhausted. Id. (citing Williams v. Greco, 442 F. Supp. 831, 833 (S.D.N.Y.1977)). There is, however, another avenue available for exhaustion purposes. A petitioner who has failed to exhaust state remedies by pursuing a direct appeal may satisfy the exhaustion requirement by utilizing available state methods for collaterally attacking his or her state conviction. See Klein, 667 F.2d at 282; see also Johnson v. Metz, 609 F.2d 1052, 1055-56 (2d Cir. 1979) (instructing habeas petitioner who did not fairly present claim in the course of his direct appeals in New York state courts to proceed by filing a motion to vacate judgment pursuant to N.Y. Crim. Proc. Law § 440.10). If collateral relief is denied, the petitioner may satisfy the exhaustion requirement by employing the

state appellate procedures available for review of such denial. Id. at 282-83.

Generally, a state prisoner has one year from the date his or her conviction becomes final to file a habeas petition in federal court. 28 U.S.C. § 2244(d)(1). This limitations period ordinarily begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The limitations period is tolled while ". . . a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2). The limitations period may also be equitably tolled if a petitioner can show that "extraordinary circumstances prevented him [or her] from filing his [or her] petition on time." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000). After a petitioner has met these threshold requirements, a federal district court generally may hear "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court" only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

    B.    **Petitioner's Claims**

        1.    *Petitioner's Fourth Amendment claim is not reviewable under the Stone v. Powell doctrine.*

Petitioner contends that his Fourth Amendment rights were violated by an alleged illegal search of his car and that the physical evidence obtained from that search should have been suppressed. Pet. Mem. of Law at 23-36. Respondent argues that Petitioner fully and fairly litigated his Fourth Amendment claim and it is, therefore, barred from review by a federal court under the Stone v. Powell doctrine.

In Powell, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his [or her] trial." Stone v. Powell, 428 U.S. 465, 482 (1976). See also Capellan v. Riley, 975 F.2d 67 (2d Cir. 1992). In Petitioner's case, the court held a four day hearing into the admissibility of the evidence obtained from the search of Petitioner's car. See Hearing transcripts dated March 21, 2002; March 22, 2003 (sic); April 12, 2002; April 15, 2002. After much testimony and argument, the court ruled that the search was legal and the evidence recovered during the search was admissible. H4: 114-122.

Petitioner then argued the same Fourth Amendment claim in his appellate brief. Resp't Ex. B (Appellant's Brief) at 27-48. By Decision and Order, the Appellate Court ruled that "the People established that the police had probable cause to search [Petitioner's] car" and that "the hearing court properly denied suppression of the gun, drugs and drug paraphernalia found in the [Petitioner's] car." People v. Guzman, 23 A.D.3d 579, 580 (2nd Dep't 2005). Because Petitioner was given the opportunity to fully and fairly litigate his Fourth Amendment claim in the state court, such claim is not reviewable in a petitioner for a writ of habeas corpus and must be dismissed.

     2.     *__Petitioner's claim that his statements were involuntary is without merit.__*

Petitioner contends in his second claim that his Fifth Amendment rights were violated because the statements he gave police were not voluntary. Pet. Mem. of Law at 36-45. Respondent argues that the determination by the state court that the statements were voluntary should be afforded a presumption of correctness and the claim should be dismissed. Resp't

8

Mem. of Law at 7-10.

Under AEDPA, federal courts on habeas review are required to "give a presumption of correctness to a written factual determination made by a state court of competent jurisdiction" unless one of several distinctions applies. 28 U.S.C. § 2254(d). Contrary to Respondent's contention, however, such a presumption of correctness is only given to matters that are considered "subsidiary factual questions." Miller v. Fenton, 474 U.S. 104, 112 (1985). With regard to *Miranda* issues, this can include numerous things, such as "the length and circumstances of the interrogation, the defendant's prior experience with the legal process, and familiarity with the *Miranda* warnings." Id. at 117. However, the Supreme Court has made clear that federal appellate courts are "not bound by" a state court's finding regarding the *voluntariness* of a confession and are required to "make an independent evaluation of the record." Id. at 110, quoting Mincey v. Arizona, 437 U.S. 385, 398 (1978)(emphasis added). This requirement for independent review regarding the voluntariness of a confession was specifically extended to federal courts considering petitions for writs of habeas corpus. Davis v. North Carolina, 384 U.S. 737 (1966)("It is our duty in this case, however, as in all of our prior cases dealing with the question whether a confession was involuntarily given, to examine the entire record and make an independent determination of the ultimate issue of voluntariness." Id. at 741-42.)[5] Additionally, the Supreme Court has held that the restrictions on federal courts

---

[5]A federal court "must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing." Townsend v.

reviewing habeas petitions as outlined in the Stone v. Powell doctrine (noted above) "do[] not extend to a state prisoner's claim that his [or her] conviction rests on statements obtained in violation of the safeguards mandated by Miranda v. Arizona." Withrow v. Williams, 507 U.S. 680, 683 (1993). Thus, this court is required to conduct an independent review of the record on the ultimate issue of the voluntariness of Petitioner's confession.

Furthermore, a federal court's review of the decision by a state court on the issue of voluntariness is subject to the harmless error standard. Zappulla v. New York, 391 F.3d 462 (2d Cir. 2004). In other words, if the reviewing court found that the state court had committed a constitutional error in admitting the statements, a writ of habeas corpus would still not issue if the erroneously admitted statements were harmless. Whether the error was harmless is a question that can be determined by two different tests: "actual prejudice" or "harmless beyond a reasonable doubt."

Under the "actual prejudice" test, habeas relief is not warranted unless "in light of the record as a whole, [the constitutional violation] had substantial and injurious effect or influence" in securing petitioner's conviction. Brecht v. Abrahmason, 507 U.S. 619, 638 (1993). This test was intentionally designed to create a "less onerous standard on habeas review of constitutional error." Id. at 637. Under the second approach, a habeas court must determine if the state court's error was "harmless beyond a reasonable doubt." Mitchell v. Esparza, 540 U.S. 12 (2003). For an error to be "harmless beyond a reasonable doubt," the state court must have acted reasonably

---

Sain, 372 U.S. 293, 313 (1963)(overruled as to the standard used, but not as to this test, by Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992)). However, none of these specific circumstances applies in this case. Therefore, an evidentiary hearing is unnecessary and review of the record by this court is sufficient.

in making its decision. Perkins v. Herbert, — F.3d —, 2010 WL610229 (2d Cir. NY) at *11.[6] This requirement of reasonableness is to conform with AEDPA, which states that an application for a writ of habeas corpus may only be granted if the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law" or "(2) resulted in a decision that was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). This test requires a "federal habeas court on habeas review to ask 'whether the state court's application of clearly established federal law was *objectively unreasonable*.' " Perkins v. Herbert, — F.3d —, 2010 WL610229 (2d Cir. NY) at *12 (emphasis added). Petitioner, therefore, has the burden of proving "some increment of incorrectness beyond error in order to obtain habeas relief." Id.

Petitioner, through his state court attorney, requested a suppression hearing on both the issue of introduction of physical evidence and the voluntariness of statements that he gave police. See generally H, H2, H3, and H4 transcripts. This hearing lasted for four days, and Petitioner was represented by counsel during each day of the hearing. Id. Corroborating testimony was given by two separate police officers that Petitioner was read his rights at the time of arrest. H3: 13, 85, 134. The specific time of the issuing of Petitioner's *Miranda* rights was duly noted in a standard police report. H4: 48. The evidence established that Petitioner was "coherent" and responded that he understood his rights. H3: 19, 87, 90, 135. Petitioner never invoked his right to remain silent, nor did he ask for an attorney. H3: 18, 90, 135. Less than two hours later, as Petitioner was being treated in the hospital for a head wound he sustained while attempting to

---

[6] In the spirit of Local Civil Rule 7.1(c), copies of the opinions with WestLaw cites are attached to the copy of this Report and Recommendation which is sent to Petitioner.

flee the scene, Petitioner confessed. H3: 19-20. This testimony was subject to cross-examination by Petitioner's counsel and went uncontradicted by any other witnesses. See generally H, H2, H3, and H4 transcripts. Based on this evidence, the state court ruled that Petitioner's statements were "made after the appropriate *Miranda* warnings had been given, were coherent, were responsive, and therefore, were voluntarily and knowingly made." H4: 121.

After Petitioner pled guilty and was sentenced, he then, through his attorney, appealed his sentence to the Appellate Division. See generally Resp't Ex. B (Appellant's Brief). Point II of Petitioner's appellate brief argues that his statements to police were not given voluntarily and should have been suppressed. Id. at 49-59. Petitioner's brief particularly emphasized that because he had a head injury at the time that *Miranda* warnings were administered, he could not "knowingly and voluntarily" waive his rights. Id. By Decision and Order, the Appellate Division, Second Department, affirmed Petitioner's judgment noting that "the evidence established that the defendant waived his *Miranda* rights" and that "his injuries did not interfere with his ability to intelligently respond to the state trooper's questions." Resp't Ex. D (Decision and Order) at 2.

The determination of whether a confession is voluntary is decided by a "totality of the circumstances" test. Mincey v. Arizona, 437 U.S. 385, 401 (1978); Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973). Upon a complete review of the record, this court finds that the state court spent a substantial amount of time eliciting testimony with regard to the voluntariness of Petitioner's statements to police. Furthermore, the issue was fully developed during the four days that the hearing court took testimony, and the factual assertions made during that hearing went uncontradicted by Petitioner. The unrebutted testimony established that Petitioner was

coherent at the time *Miranda* warnings were administered, and that he affirmatively stated that he understood his rights.  H3: 19, 87, 90, 135.  Petitioner never invoked his right to remain silent, nor did he request an attorney, and the time between the administering of *Miranda* warnings and Petitioner's confession was less than two hours.  H3: 19-20.  Neither the hearing court nor the Appellate Division were persuaded that Petitioner's injuries interfered with his ability to understand and knowingly waive his rights.  H4: 121; Resp't Ex. D (Decision and Order) at 2.  Therefore, I must conclude, based on the entire record, that Petitioner's statements to police were voluntarily made.

  Even if Petitioner's statements were improperly admitted, such an admission was harmless error under either the "actual prejudice" test or the "harmless beyond a reasonable doubt" test.  There was no actual prejudice to Petitioner by admission of his confession, as the weight of all the other physical evidence found in his car and the videotape of the incident were enough to convict petitioner.  "Ultimately, however, 'the strength of the prosecution's case is probably the single most critical factor' in a harmless error analysis."  Perkins v. Herbert, — F.3d —, 2010 WL610229 (2d Cir. NY) at *14 (citing United States v. Reifler, 446 F.3d 65, 87 (2d Cir. 2006)).  Here, the Prosecution's case was very strong, such that even without Petitioner's confession, the Government would almost certainly have prevailed.  Additionally, under the "harmless beyond a reasonable doubt" test, the state court's determination that Petitioner's confession was voluntarily made was not objectively unreasonable and Petitioner does not, either in his state appellate brief or his Memorandum of Law, assert any evidence of "some increment of incorrectness beyond error in order to obtain habeas relief."  Id. at 12.  Because Petitioner has not satisfied his burden of proving that the state court's determination was objectively

unreasonable, and this court's review of the record confirms the state court's decision that Petitioner's statements were voluntarily made, Petitioner's second claim must be dismissed.

### 3. *Petitioner's claim that he was improperly sentenced as a persistent violent felony offender is procedurally barred.*

Petitioner's third asserted ground for relief[7] is that the Prosecutor failed to ask Petitioner at sentencing if he wished "to controvert any allegation" made in the required statement filed by the Government to support the contention that Petitioner was a persistent violent felony offender. Resp't Ex. B (Appellant's Brief) at 59-61. Respondent argues that this is a matter of state law and is, therefore, not reviewable by a federal court on a petition for a writ of habeas corpus. Resp't Mem. of Law at 10-12.

Respondent is correct in the contention that the procedure of sentencing is exclusively a matter of state law. See Roberts v. Superintendent, Groveland Correctional Facility, 26 F. Supp. 2d 684 (S.D.N.Y. 1998)(where the court held that failure to await an updated presentence report before sentencing "is a matter of state law that does not implicate federal constitutional rights"). Id. at 686. In any event, Petitioner's third claim was determined to be procedurally defaulted by the Appellate Division and, therefore, is not reviewable by this court on a petition for a writ of habeas corpus. Under either theory, this is a matter not reviewable by this court.

The Supreme Court held in Coleman v. Thompson, that a federal court may not review a claim in a habeas petition "when a state court declined to address a prisoner's federal claim[] because the prisoner had failed to meet a state procedural requirement." 501 U.S. 722, 730

---

[7] This argument is only put forward by Petitioner by reference in his petition for a writ of habeas corpus to his state appellate court brief and is not included in the Memorandum of Law that accompanies his petition for a writ of habeas corpus.

(1991). This decision is grounded in the idea that the state has "independent and adequate state grounds" for such a dismissal and federal courts are ever mindful of the notions of "comity and federalism." Harris v. Reed, 489 U.S. 255, 260 (1989); Coleman, 501 U.S. at 730. In other words, "an adequate and independent finding of a procedural default [by a state court] will bar federal habeas review of the federal claim." Harris, 489 U.S. at 262.

Here, the Appellate Division determined that Petitioner "did not preserve for appellate review his challenge to the procedure to which he was sentenced as a persistent violent felony offender." Resp't Ex. D (Decision and Order) at 2. Such a procedural default is an independent and adequate state ground for denial of a claim and, therefore, precludes a federal court from considering the matter on habeas review. See also Hughes v. Phillips, 457 F. Supp. 2d 343, 369 (S.D.N.Y 2006)("[T]he Appellate Division's invocation of the procedural bar was an independent and adequate State ground for denial of relief that prevents habeas relief..."). However, a Petitioner can overcome such a procedural default if he or she can show "cause for the procedural default and prejudice attributable thereto" (Harris, 489 U.S. at 262) or "actual innocence" (Schlup v. Delo, 513 U.S. 298 (1995)). Petitioner in this case has provided no proof of either cause and prejudice or actual innocence and, therefore, his claim must be dismissed.

## CONCLUSION

For the reasons stated above, I conclude, and respectfully recommend that Your Honor should conclude, that the instant habeas petition should be dismissed. As the petition presents no questions of substance for appellate review, I conclude, and respectfully recommend, that a certificate of probable cause should not issue. Rodriguez v. Scully, 905 F.2d 24 (2d Cir. 1990) (per curiam); Alexander v. Harris, 595 F.2d 87, 90-91 (2d Cir. 1979). I further conclude, and

respectfully recommend, that the Court should certify pursuant to 28 U.S.C. §1915(a) that an appeal from this order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438 (1962)

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(e), or a total of seventeen (17) working days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Stephen C. Robinson, at the United States District Court, Southern District of New York, United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Robinson.

Dated: March 17, 2010
       White Plains, NY

Respectfully submitted,

LISA MARGARET SMITH
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

Honorable Stephen C. Robinson, U.S.D.J.
300 Quarropas Street
White Plains, New York 10601

James Guzman, #02-B-1743
Coxsackie Correctional Facility
PO Box 999
Coxsackie, New York 12051-0999

Carrie A.Ciganek, Senior Assistant District Attorney
Office of the District Attorney of Rockland County
One South Main Street, Suite 500
New City, New York 10956